William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax)(646) 688-3078

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

| | | |
|---|---|---|
| JOHNNY GARCIA and JUAN ARROYO, | : | ECF |
| Individually and on Behalf of All Other | : | 16 Civ. _____ |
| Persons Similarly Situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | **COMPLAINT AND** |
| -against- | : | **JURY DEMAND** |
| | : | |
| LIBERTY DISTRIBUTORS INC., EDMOND GUINDI, | : | |
| and JOHN DOES #1-10, | : | |
| | : | |
| Defendants. | : | |

--------------------------------------------------------------------X

Plaintiff JOHNNY GARCIA and JUAN ARROYO ("Plaintiffs"), on behalf of

themselves individually and as class representatives of other employees similarly situated, by

and through their attorney, complain and allege for their complaint against LIBERTY

DISTRIBUTORS INC., EDMOND GUINDI, and JOHN DOES #1-10 (together "Defendant" or

"Defendants") as follows:

**NATURE OF THE ACTION**

1.      Plaintiffs JOHNNY GARCIA and JUAN ARROYO  were warehouse worker

employees ("warehouse employees') who like similar employees were illegally not paid for all

their hours worked and not paid time and one half for his hours worked over forty in a week

("overtime").

2.      Defendants required their warehouse employees to punch out of work and then

keep working or remain waiting at the end of each workday, generally for more than 30 minutes,

until management employees were ready to leave the warehouse at which time all employees were directed to evacuate the warehouse together at one time.

3.     The policy was intended to protect management employees from being carjacked or robbed as they left the warehouse.

4.     Defendants illegally failed to pay the warehouse employees for their time working and/or waiting to leave after punching out of work.

5.     Plaintiffs allege on behalf of themselves and other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid minimum wages and to unpaid overtime wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

6.     Plaintiffs further complain on behalf of themselves, and a class of other similarly situated current and former employees of the Defendant, pursuant to Fed. R. Civ. P. 23, that they are entitled to back wages from Defendant for (a) hours worked for which they did not receive wages, and (b) hours worked for which they were not paid minimum wages and (c) overtime hours worked for which they did not receive time and one half their actual wages, as required by the New York Labor Law §§ 650 *et seq*. and the supporting New York State Department of Labor regulations.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant

to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.      Venue is proper in this district pursuant to 28 U.S.C. §1391.

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

10.     Plaintiff JOHNNY GARCIA is an adult individual, residing in Kings County in New York State.

11.     Plaintiff JUAN ARROYO is an adult individual, residing in the State of Georgia.

12.     Upon information and belief, Defendant EDMOND GUINDI s an adult individual, residing in Kings County in New York State.

13.     Upon information and belief, Defendant  LIBERTY DISTRIBUTORS INC., ("Corporate Defendant") is a New York corporation, with its principal place of business at 1065 S. Shepard Ave., Brooklyn, N.Y. 11208.

14.     Upon information and belief, Defendants  EDMOND GUINDI and JOHN DOES #1-10  ("Individual Defendants") are each an officer, director and/or managing agent of the Corporate Defendant, whose address is unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and is jointly and severally liable with the Corporate Defendant.

15.     Upon information and belief, during the prior 3 years, the Individual Defendants had authority over the Corporate Defendant's management, supervision, and oversight of the

Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendants' warehouse employees and other employees and their decisions directly affected the nature and condition of such employees' employment.

16.     Upon information and belief, during the prior 3 years, the Individual Defendants each (1) had the power to hire and fire warehouse employees of the Corporate Defendant, (2) supervised and controlled the warehouse employees' schedules and conditions of employment, (3) determined the rate and method of payment of the warehouse employees, and (4) maintained employment records related to the warehouse employees.

## COLLECTIVE ACTION ALLEGATIONS

17.     Pursuant to 29 U.S.C. §207, Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendant at any time since December 23, 2010 (time tolled by failure to post notice) to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wages and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

18.     Upon information and belief, Defendants did not post a notice indicating that the warehouse employees had a right to minimum wages and/or overtime wages.

19.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are at least 40 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate

financial resources, access to attorneys or knowledge of their claims.

20.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

21.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

22.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are

a.     whether the Defendants employed the Collective Action members within the meaning of the FLSA;

b.     whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

c.     what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.        whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of 29 C.F.R. § 516.4;

e.        whether Defendants failed to pay the Collective Action Members minimum wages and overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f.        whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

g.        whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

h.        whether Defendants should be enjoined from such violations of the FLSA in the future.

23.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

24.    Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

25.    Plaintiffs bring their New York Labor Law claim on behalf of all persons who were employed by Defendant at any time since December 23, 2010 to the entry of judgment in this case (the "Class Period"), who were not paid all their straight time wages, minimum wages, and/or overtime wages and/or were not provided proper notices required by the Wage Theft Prevention Act (the "Class").

26.     The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there at least 40 members of Class during the Class Period.

27.     The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

28.     The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

29.     Plaintiffs are committed to pursuing his action and have retained competent counsel experienced in employment law and class action litigation.

30.     Plaintiffs have the same interests in this matter as all other members of the class and Plaintiffs' claims are typical of the Class.

31.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.   whether the Defendants employed the members of the Class within the meaning of the New York Labor Law;

b.   whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and members of the Class;

c.   what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.   whether Defendants failed and/or refused to pay the members of the Class for all hours worked by them as well as premium pay for hours worked in excess of forty hours per workweek within the meaning of the New York Labor Law;

e.   whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, interest, costs and disbursements and attorneys' fees;

f.   whether the Defendants should be enjoined from such violations of the New York Labor Law in the future; and

## STATEMENT OF FACTS

JOHNNY GARCIA

32.    Plaintiff JOHNNY GARCIA ("GARCIA") was employed as a warehouse worker, by LIBERTY DISTRIBUTORS INC. and EDMOND GUINDI ("Defendants"), from on or about May 1, 2015 until about July 30, 2016 (the "Garcia time period").

33.    EDMOND GUINDI and others ("Individual Defendants") were officers and/or management employees of LIBERTY DISTRIBUTORS INC. ("Corporate Defendant").

34.    Upon information and belief, during the Garcia time period, the Individual Defendants had authority over the Corporate Defendant's management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendants' warehouse worker employees and other employees and their decisions directly affected the nature and condition of the warehouse worker employees' employment.

35.    Upon information and belief, during the Garcia time period, each Individual

Defendant (1) had the power to hire and fire the warehouse worker employees of the Corporate Defendant, (2) supervised and controlled the warehouse worker employees' schedules and conditions of employment, (3) determined the rate and method of payment of the warehouse worker employees, and (4) maintained employment records related to the warehouse worker employees.

36.     During the time period, GARCIA was not paid at time and one half his regular rate of pay for all of my hours worked over 40 in a work week ("overtime wages"), and GARCIA was not paid for all of his hours worked, in violation of the Fair Labor Standards Act ("FLSA") and applicable New York Labor laws.

37.     During the time period, GARCIA generally worked at least 63 hours per week.

38.     During the time period, GARCIA generally started work at 7:30 a.m. at the warehouse located at 1065 Shepherd Ave., Brooklyn, N.Y. 11208 and was permitted to leave the warehouse at about 6:30 p.m. after completing work and waiting for other employees to complete their work as instructed.  GARCIA generally worked Sunday through Friday.

39.     During the time period, GARCIA was first paid minimum wage of $8.75 per hour for the work for which Defendants gave him credit and then after working a few months, his pay increased to $9.00 per hour for the hours for which they gave him credit, and then after a few more months his pay increased to $10.00 per hour for the hours for which Defendants gave him credit.

40.     When GARCIA started work, GARCIA punched in using a facial recognition device.

41.     GARCIA worked as a warehouse worker as a picker or forklift operator.  As a picker, GARCIA picked products from storage in the warehouse and put them in a crate or skid

and left them in another part of the warehouse for distribution.  As a picker, GARCIA used a

carjack machine which is a small electric vehicle that allowed him to move the crate or skid as he

filled it up. As a forklift operator, GARCIA moved goods from place to place inside the

warehouse pursuant to the instructions of his supervisor.

42.    GARCIA ended the day when he was told to stop working by the foreman named

Moses.

43.    GARCIA then went and punched out using the facial recognition machine.

44.    GARCIA then was not permitted to leave the building but was required to go to a

waiting room where GARCIA generally waited approximately 30 to 40 minutes until all

employees had finished their work and were ready to leave at which point Abe, the manager of

the facility would come and tell GARCIA and the other employees that they could then leave the

waiting room and go through the gate.  GARCIA and the other employees then were required to

wait on the other side of the gate until Abe had closed and locked the gate and set the alarm.

45.    GARCIA and the other warehouse workers in the warehouse were not paid for

their time waiting to be given permission to leave or working after they had punched out

("waiting time").

46.    GARCIA and the other warehouse workers generally were not paid for about 30

to 40 minutes of waiting time or working time each day that they worked.

47.    GARCIA and similar employees were generally waiting long periods for the

administrative employees to finish their paperwork.

48.    GARCIA repeatedly complained to Abe the general manager of the warehouse

and to Moses, the Foreman, throughout the Garcia time period about the requirement to wait

without pay after punching out.

49.     Abe and Moses both responded simply that all employees were not permitted to leave until they could all leave together and that the company did not pay for the waiting time.

50.     Abe and Moses also repeatedly advised GARCIA that the company policy was to suspend any employee who left before being told to do so and to terminate the employee if the violation happened a second time.

51.     The reason for forcing all the employees to leave together was to make it safer for the manager employees to leave the warehouse.  These manager employees generally left by car and upon information and belief were worried about being car jacked or robbed as they left in the evening.

52.     On or about July 30, 2016, GARCIA called in to say that he was sick and told Moses that he was sick and Moses responded by accusing GARCIA of not being sick.  GARCIA emphatically stated that he was sick and then again complained about not getting paid for all his waiting time.  Moses at that time gave the phone to Abe who had been listening to the conversation and who then said that he was tired of GARCIA's complaining and then told GARCIA that he was fired and not to come back to work.

53.     Abe terminated GARCIA in retaliation for his complaining about not being paid wages for hours worked.

54.     GARCIA worked for Defendants with at least 10 other similar warehouse workers who performed similar work as GARCIA.

55.     Upon information and belief, Defendants, during the last 6 years, have employed at least 40 other similar warehouse worker employees.

56.     GARCIA's duties as a warehouse worker did not include managerial responsibilities or the exercise of independent business judgment.  GARCIA did not have the

power to hire or fire employees.

57.     GARCIA and the other similar warehouse worker employees regularly worked more than 40 hours per week for Defendants.

58.     GARCIA and these other similar warehouse worker employees worked more than 40 hours per week and were not paid wages and/or overtime wages for all of our hours worked over 40 hours a week.

59.     During the time period, GARCIA was not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principle place of business and telephone number and my specific correct rate of pay as required by the New York Wage Theft Prevention Act ("WTPA Information").  GARCIA has not been given any correct notice of this information to sign and has not signed any such correct notice.

60.     GARCIA knows that others like himself were not paid wages and minimum wages for all of their hours worked and were not paid overtime wages by Defendants because he frequently discussed the issue with these other similar warehouse worker employees including, but not limited to, Juan Arroyo, Marlon, Phil, and Robert who all said that they also were not paid for waiting time and generally worked more than 40 hours per week and were not paid for all of their hours worked and also were not paid time and one half for all of their hours worked over 40 in a workweek.

61.     Upon information and belief, GARCIA knows that others like him were not provided with notice of the WTPA Information and were not given correct WTPA forms to sign because he discussed the issue with these other similar warehouse worker employees who never indicated that they signed a correct Wage Theft Prevention Act form.

62.     Throughout the time period that GARCIA worked for Defendants, and, upon

information and belief, both before that time and continuing until the present, Defendants have likewise employed other individuals, like GARCIA, in positions as warehouse workers.

63.      Such individuals have worked in excess of 40 hours a week yet the Defendants have likewise willfully failed and/or refused to pay them overtime compensation of time and one-half their regular hourly rate for all of their hours worked over 40 and minimum wages for all hours worked.

JUAN ARROYO

64.      JUAN ARROYO ("ARROYO") was employed as a warehouse worker, by Defendants from on or about September 15, 2015 to about July 27, 2016 (the "Arroyo time period").

65.      EDMOND GUINDI and others ("Individual Defendants") were officers and/or management employees of LIBERTY DISTRIBUTORS INC. ("Corporate Defendant").

66.      Upon information and belief, during the Arroyo time period, the Individual Defendants had authority over the Corporate Defendant's management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendants' warehouse worker employees and other employees and their decisions directly affected the nature and condition of the warehouse worker employees' employment.

67.      Upon information and belief, during the Arroyo time period, each Individual Defendant (1) had the power to hire and fire the warehouse worker employees of the Corporate Defendant, (2) supervised and controlled the warehouse worker employees' schedules and conditions of employment, (3) determined the rate and method of payment of the warehouse worker employees, and (4) maintained employment records related to the warehouse worker

employees.

68.     During the Arroyo time period, ARROYO was not paid at time and one half his

regular rate of pay for all of my hours worked over 40 hours in a work week ("overtime wages"),

and ARROYO was not paid for all of his hours worked, in violation of the Fair Labor Standards

Act ("FLSA") and applicable New York Labor laws.

69.     During the Arroyo time period, ARROYO generally worked at least 45 hours per

week.

70.     During the Arroyo time period, ARROYO generally started work at 7:30 a.m. at

the warehouse located at 1065 Shepherd Ave., Brooklyn, N.Y. 11208 and was permitted to leave

the warehouse at about 5:00 p.m. to 6:30 p.m. after completing work and waiting for other

employees to complete their work as instructed. ARROYO generally worked Sunday through

Friday.

71.     During the Arroyo time period, ARROYO was first paid the minimum wage rate

of $9.00 per hour for the work for which Defendants gave him credit and then after working a

few months, his pay increased to $10.00 per hour for the hours for which they gave him credit,

and then after a few more months his pay increased to $10.75 per hour for the hours for which

Defendants gave him credit.

72.     When ARROYO started work, ARROYO punched in using a facial recognition

device.

73.     ARROYO worked as a warehouse worker as a picker or forklift operator.  As a

picker, ARROYO picked products from storage in the warehouse and put them in a crate or skid

and left them in another part of the warehouse for distribution.  As a picker, ARROYO used a

carjack machine which is a small electric vehicle that allowed him to move and fill a crate or

14

skid. As a forklift operator, ARROYO moved goods from place to place inside the warehouse

pursuant to the instructions of his supervisor.

74.     ARROYO ended the day when ARROYO was told to stop working by the

foreman named Moses.

75.     ARROYO then went and punched out using the facial recognition machine.

76.     ARROYO then was not permitted to leave the building but was required to go to a

waiting room where ARROYO generally waited approximately 30 to 40 minutes until all

employees had finished their work and were ready to leave at which point Abe, the manager of

the facility would come and tell him and the other employees that they could then leave the

waiting room and go through the gate to leave the warehouse.  Arroyo and the other employees

then were required to wait on the other side of the gate until Abe had closed and locked the gate

and set the alarm.

77.     ARROYO and the other warehouse workers in the warehouse were not paid for

their time waiting to be given permission to leave or working after they had punched out

("waiting time").

78.     ARROYO and the other warehouse employees generally were not paid for about

30 to 40 minutes of waiting time and/or work time each day that they worked.

79.     ARROYO and similar employees were generally waiting long periods for the

administrative employees to finish their paperwork.

80.     ARROYO repeatedly complained to Abe the general manager of the warehouse

and to Moses, the Foreman throughout the Arroyo time period about the requirement to wait

without pay after punching out.

81.     Abe and Moses both responded that the company policy was that all employees

were not permitted to leave until they could all leave together and that the company did not pay for this waiting time.

82.     ARROYO wrote a letter to Abe on February 5, 2016 complaining about not getting paid for waiting time.

83.     ARROYO never received a written response to his written complaint but rather was simply told again that the company policy was not to pay for the required waiting time.

84.     ARROYO was also told to stop complaining about not getting paid for the waiting time, but nevertheless continued to complain because it was not fair.

85.     Abe and Moses also repeatedly advised him that the company policy was to suspend any employee who left before being told to do so and to terminate the employee if the violation happened a second time.

86.     ARROYO was terminated on July 27, 2016 by Abe in retaliation for his complaining about not being paid wages for hours worked.

87.     ARROYO worked for Defendants with at least 10 other similar warehouse workers who performed similar work as ARROYO.

88.     Upon information and belief, Defendants, during the last 6 years, have employed at least 40 other similar warehouse worker employees.

89.     ARROYO's duties as a warehouse worker did not include managerial responsibilities or the exercise of independent business judgment. ARROYO did not have the power to hire or fire employees.

90.     ARROYO and the other similar warehouse worker employees regularly worked more than 40 hours per week for Defendants.

91.     ARROYO and these other similar warehouse worker employees worked more

than 40 hours per week and were not paid wages and/or overtime wages for all of our hours worked over 40 hours a week.

92.    During the time period, ARROYO was not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principle place of business and telephone number and my specific correct rate of pay as required by the New York Wage Theft Prevention Act ("WTPA information"). ARROYO has not been given any correct notice of this information to sign.

93.    ARROYO knows that others like him were not paid wages and minimum wages for all of their hours worked and were not paid overtime wages by Defendants because ARROYO frequently discussed the issue with these other similar warehouse worker employees including, but not limited to, Johnny Garcia, Chris Harrell, Vichon and Philip, who all said that they also were not paid for waiting time and generally worked more than 40 hours per week and were not paid for all of their hours worked and also were not paid time and one half for all of their hours worked over 40 in a workweek.

94.    Throughout the Arroyo time period, and, upon information and belief, both before that time and continuing until the present, Defendants have likewise employed other individuals, like ARROYO in positions as warehouse workers and have not posted any notice indicating that the warehouse employees have a right to minimum wages and/or overtime wages.

95.    Such individuals have worked in excess of 40 hours a week yet the Defendants have likewise willfully failed and/or refused to pay them overtime compensation of time and one-half their regular hourly rate for all of their hours worked over 40 and minimum wages for all hours worked.

**CLAIM I**
**FAIR LABOR STANDARDS ACT**

96.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

97.     At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

98.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

99.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

100.    Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).  The named Plaintiffs' written consents are attached hereto and incorporated by reference.

101.    At all relevant times, the Defendants had a policy and practice of refusing to pay its employees minimum wages and/or overtime wages equal to time and one half their employees' regular wages for hours worked over forty in a work week.

102.    As a result of the Defendants' willful failure to compensate their employees, including Plaintiffs and the Collective Action members overtime wages and/or minimum wages for all of their hours worked, the Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

103.    As a result of the Defendants' failure to record, report, credit and/or compensate

their employees, including Plaintiff and the Collective Action members, the Defendants have failed to make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

104.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

105.     Due to the Defendants' FLSA violations, Plaintiff and the Collective Action Class are entitled to recover from the Defendants, their unpaid minimum and overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## CLAIM II
## NEW YORK LABOR LAW

106.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

107.     At all relevant times, Plaintiff and the members of the Class were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

108.     Defendants willfully violated Plaintiff's rights, and the rights of the members of the Class, by failing to pay them wages in violation of the New York Labor Law and its regulations.

109.     The Defendants' New York Labor Law violations have caused Plaintiff and the members of the Class, irreparable harm for which there is no adequate remedy at law.

110.     Due to the Defendants' New York Labor Law violations, Plaintiff and the

members of the Class are entitled to recover from Defendants their unpaid wages, unpaid

minimum wages, unpaid overtime wages, reasonable attorneys' fees, and/or costs and

disbursements of the action, pursuant to New York Labor Law §663(1) et seq.

111.    Upon information and belief Defendants did not provide proper notices to

Plaintiff and similar employees of their wage rate and the name of their employer and the time

period during which they would be paid.

112.    Defendants willfully violated the rights of Plaintiff and the members of the Class

by failing to provide them proper notices and wage statements in violation of the New York

Wage Theft Prevention Act, N.Y. Lab. Law § 198(1-a) (enacted on April 9, 2011).

113.    As a result of Defendants' violation of the New York Wage Theft Prevention Act,

Plaintiff and the members of the Class are each entitled to damages of at least $150 per week

during which the violations occurred.

<u>**THIRD CLAIM FOR RELIEF**</u>
<u>**(FLSA - Discrimination and Retaliation)**</u>

114.    Plaintiffs repeat and reallege each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

115.    By terminating Plaintiffs, Defendants violated the FLSA, 29 U.S.C. §201 et seq.

Section 215 (a) (3) specifically states:

It shall be unlawful for any person—

(3) to discharge or in any other manner discriminate against any employee
because such employee has filed any complaint or instituted or caused to be
instituted any proceeding under or related to this Act [29 USCS §§ 201 et seq.,
generally; for full classification, consult USCS Tables volumes], or has testified
or is about to testify in any such proceeding, or has served or is about to serve on
an industry committee.

116.    Due to Defendants' illegal termination of Plaintiff, Plaintiff seeks and is entitled

to recover from Defendants her unpaid wages, unpaid overtime compensation, damages for unreasonably delayed payment of wages, back pay, front pay, rehiring and/or reinstatement to her former position, and reasonable attorneys' fees, and costs and disbursements of the action.

### FOURTH CAUSE OF ACTION
#### (New York Labor Law - Discrimination and Retaliation)

117.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

118.    By terminating Plaintiffs, Defendants violated New York Labor Law § 215.

119.    New York Labor Law § 215 states:

§ 215.  Penalties and civil action; [fig 1] prohibited retaliation

1. (a) No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has [fig 1] engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner (ii) because such employer or person believes that such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general, or to any other person that the employer has violated any provision of this chapter, or any order issued by the commissioner (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter, or [fig 2] (iv) because such employee has provided information to the commissioner or his or her authorized representative or the attorney general, or [fig 3] (v) because such employee has testified or is about to testify in an investigation or proceeding under this chapter, or [fig 4] (vi) because such employee has otherwise exercised rights protected under this chapter, or [fig 5] (vii) because the employer has received an adverse determination from the commissioner involving the employee.
        An employee complaint or other communication need not make explicit reference to any section or provision of this chapter to trigger the protections of this section.

******                    ******                    ******
2. (a) An employee may bring a civil action in  a court of competent jurisdiction

against any employer or persons alleged to have violated the provisions of this section. The court shall have jurisdiction to restrain violations of this section, within two years after such violation, regardless of the dates of employment of the employee, and to order all appropriate relief, including enjoining the conduct of any person or employer; ordering payment of liquidated damages, costs and reasonable attorneys' fees to the employee by the person or entity in violation; and, where the person or entity in violation is an employer, ordering rehiring or reinstatement of the employee to his or her former position with restoration of seniority or an award of front pay in lieu of reinstatement, [fig 1] and an award of lost compensation [fig 2] and damages, costs and reasonable attorneys' fees. Liquidated damages shall be calculated as an amount not more than ten thousand dollars. The court shall award liquidated damages to every employee aggrieved under this section, in addition to any other remedies permitted by this section. The statute of limitations shall be tolled from the date an employee files a complaint with the commissioner or the commissioner commences an investigation, whichever is earlier, until an order to comply issued by the commissioner becomes final, or where the commissioner does not issue an order, until the date on which the commissioner notifies the complainant that the investigation has concluded. Investigation by the commissioner shall not be a prerequisite to nor a bar against a person bringing a civil action under this section.

3. Any employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person who violates subdivision one of this section shall be guilty of a class B misdemeanor.

120.    Prior to the commencement of this claim, on December 23, 2016, Plaintiffs served

a copy of this Complaint upon the Attorney General of New York State.

121.    Due to Defendants' illegal termination of Plaintiff, Plaintiff seeks and is entitled

to recover from Defendants her unpaid wages, damages for unreasonably delayed payment of

wages, back pay, front pay, rehiring and/or reinstatement to her former position, and reasonable

attorneys' fees, costs and disbursements of the action, and liquidated/punitive damages, pursuant

to New York Labor Law § 663(1).

## FIFTH CAUSE OF ACTION
### (Breach of Contract)

122.    Plaintiffs repeat and reallege each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

123.    Plaintiffs and members of the Class entered into employment contracts with Defendants.

124.    Plaintiffs and members of the Class fully performed all their obligations under the employment contracts.

125.    Defendants breached the employment contracts by failing to pay wages required to be paid by the contracts to the Plaintiffs and members of the Class.

126.    Defendants' breach has caused Plaintiffs and members of the Class to suffer damages.

127.    As a result of Defendants' breach of the employment agreements Plaintiffs and members of the Class have been damaged in an amount to be determined at trial.

<u>**SIXTH CAUSE OF ACTION**</u>
<u>**(Unjust Enrichment)**</u>

128.    Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

129.    Defendants were unjustly enriched at the expense of Plaintiffs and the members of the Class.

130.    As a result of Defendants' unjust enrichment, Plaintiffs and members of the Class have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and all other similarly situated

Collective Action members and members of the Class, respectfully request that this Court grant

the following relief:

a. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1),

(2) and (3) on behalf of the members of the Class and appointing Plaintiffs and

their counsel to represent the Class;

b. Designation of this action as a collective action on behalf of the Collective Action

members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all

similarly situated members of an FLSA Opt-In Class, apprising them of the

pendency of this action, permitting them to assert timely FLSA claims in this

action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and

appointing Plaintiffs and their counsel to represent the Collective Action

members;

c. A declaratory judgment that the practices complained of herein are unlawful

under the FLSA and the New York Labor Law;

d. An order tolling the statute of limitations;

e. An injunction against the Defendants and their officers, agents, successors,

employees, representatives and any and all persons acting in concert with it, as

provided by law, from engaging in each of the unlawful practices, policies and

patterns set forth herein;

f. An award of costs related to uniform cleaning and cost;

g. An award of lost compensation resulting from Plaintiffs' illegal termination;

h.  An award of unpaid wages, overtime wages and minimum wages due under, among others, the FLSA, the New York Labor Law, New York Wage Theft Prevention Act, and the New York common law;

i.  An award of liquidated and/or punitive damages, as a result of the Defendants' willful failure to pay wages, minimum wages, and/or overtime wages pursuant to 29 U.S.C. § 216 and the New York Labor Law and the New York common law;

j.  An award of prejudgment and postjudgment interest;

k.  An award of costs and expenses of this action together with reasonable attorney's and expert fees;

l.  Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.


Dated:  New York, New York
        December 23, 2016

                        LAW OFFICE OF WILLIAM COUDERT RAND



                        _____
                        William Coudert Rand, Esq.
                        *Attorney for Plaintiffs*, Individually and on
                        Behalf of All Persons Similarly Situated
                        501Fifth Ave., 15th Floor
                        New York, New York 10017
                        Tel: (212) 286-1425
                        Fax: (646) 688-3078
                        Email: wcrand@wcrand.com

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of _Edmond Guinci_ _Liberty Distributers Inc._ to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_Johnny Garcia_          10-24-16          _Johnny Garcia_
Signature                Date    Print Name


8

<u>CONSENT TO BECOME PARTY PLAINTIFF</u>

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of _____ Abe _____ Liberty Distributing Inc. Edward Giordi, Moses _____ to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____     11/8/16     Juan Arroyo
Signature                            Date      Print Name

8